AO 106 (Rev. 04/10) Application for a Search Warrant

# United States District Court
for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

LG cellular telephone utilizing Verizon Wireless call number 716-200-3770

Case No. 19-mj- 30

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

An LG cellular telephone utilizing Verizon Wireless call number 716-200-3770, as further described in Attachment A, attached hereto,

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*: See Attachment B, attached hereto and incorporated herein by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section 875(c).

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

JASON A. KAMMERAAD
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 18, 2019

*Judge's signature*

City and state: Buffalo, New York

H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

## AFFIDAVIT IN SUPPORT OF APPLICATION UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 41 FOR WARRANT TO SEARCH AND SEIZE

STATE OF NEW YORK )
COUNTY OF ERIE      )   SS:
CITY OF BUFFALO    )

JASON A. KAMMERAAD, being duly sworn, deposes and says:

1. I am a Special Agent with the Federal Bureau of Investigation assigned to the Buffalo Field Office.

2. This Affidavit is made in support of an application for an additional warrant to search the cellular telephone of MORGAN FALLON described more fully in **Attachment A** hereto, for the items and information described in **Attachment B** to this Affidavit.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## RELEVANT STATUTE

4. Title 18, United States Code, Section 875(c), provides, in relevant part, "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c).

## PROBABLE CAUSE

### The Threatening Communication

5. FALLON resides at 17 Park Street, Buffalo, New York, 14201. That address is in Buffalo's "Allentown" neighborhood. FALLON's date of birth is September 15, 1980. Until May 2018, FALLON was employed by the United States Department of Veterans Affairs (the "VA") as a Veterans Claims Examiner. In that position, FALLON was responsible for reviewing education reimbursement claims submitted by veterans and members of the United States military.

6. FALLON's employment was terminated in May 2018, based on, among other things, his interaction with an active-duty, commissioned Captain in the United States Army assigned as a Chaplain in Louisiana (the "Army Chaplain"). The Army Chaplain has been interviewed by FBI agents concerning this matter.

7. The Army Chaplain had submitted a claim to the VA for reimbursement of expenses related to his religious education. In November 2017, the Army Chaplain's claim was denied by letter. The letter was unusual in tone and contained sporadically bolded and underlined text. The Army Chaplain appealed the denial and complained about the unprofessional nature of the denial letter.

8. In the early afternoon of May 4, 2018, the VA informed FALLON that his employment was being terminated. As part of the termination process, FALLON was

2

provided with a packet of materials setting forth the grounds for his termination, including the complaint from the Army Chaplain.

9. On May 4, 2018, at approximately 4:40 p.m. CST, the Army Chaplain received a telephone call from (716) 200-3770 which lasted approximately one minute. The Army Chaplain realized the call was coming from a 716 area code and assumed it was likely from the Buffalo VA processing center so he answered the telephone. The Army Chaplain placed the telephone call on speaker mode, which is his common practice because he has hearing aids. His wife and daughter were present and heard the following conversation.

| | |
|---|---|
| AC: | This is [Army Chaplain]. |
| Caller: | Is this Chaplain [ ]? |
| AC: | This is. |
| Caller: | Chaplain [ ]? |
| AC: | Yes. |
| Caller: | Chaplain [ ] residing at [ ], Louisiana?<br>You're the mother fucker trying to get me fired.<br>Don't know who the fuck you think you are.<br>You're a cock sucker.<br><br>You're a worthless piece of shit.<br>You don't understand when you filed a claim, you're out of benefits.<br>You fucking don't get it.<br>You are a piece of shit.<br>I have all your paperwork and you are trying to get me fired<br><br>I know where you live mother fucker.<br>I have all of your information. I will fucking end you.<br><br>I will drive down there and take care of you, you're fucking stupid, you fucking cock sucking nigger. |

3

10. The Army Chaplain stated the caller was ranting the entire time so he did not engage the caller to any real extent. The Army Chaplain said that during the telephone call it sounded as if the caller was flipping through papers and had a file with his information. At least three times during the conversation, the caller said, "I know where you live," and stated the Army Chaplain's full address in Louisiana. The Army Chaplain found this extremely upsetting. He felt threatened and believed the caller wanted him dead. He was troubled that the caller claimed he would travel to the Army Chaplain's residence in Louisiana to end his life.

11. The Army Chaplain advised that after receiving the telephone call he contacted his supervisor who directed him to contact the military police. The Army Chaplain subsequently called the military police. While speaking to the military police, he noticed a call coming in from the same 716 telephone number as before. The military police directed that he not answer this call and let it go to voicemail.

12. The Army Chaplain stated the caller left a voicemail at approximately 5:00 p.m. CST which lasted one minute and 18 seconds. I have obtained a copy of the voicemail and listened to it. In the voicemail, the caller identified himself as "Morgan Fallon" and stated, "I am the VA employee you want fired so badly." The caller also stated that the Army Chaplain was "the most pathetic person [he] had ever heard of" and was a "douchebag." The caller referenced several religious books that the Army Chaplain had purchased and for which he had sought reimbursement, and suggested that the Army Chaplain learn how to be more forgiving. The caller ended the voicemail by inviting the Army Chaplain to call him back at

4

phone number 716-200-3770. The Army Chaplain believed that the caller clearly had personal information about him, including books he had purchased, and reiterated that it was particularly troubling to think the caller had his personal records.

### The Execution Of The First Search Warrant

13.     On May 9, 2018, Special Agents of the FBI executed a search warrant signed by this Court that same day. The search warrant authorized a search of FALLON's residence for his cellular telephone and "any personal information related to the Army Chaplain, including his name, address, telephone number, family members, military service history, and information pertaining to claims he submitted to the VA." Among the items that were seized were an LG cellular telephone Verizon Wireless that telephone number (716) 200-3770 (the "Telephone") and a folder containing Veterans Administration documents.

14.     Buffalo Police officers assisting the FBI in the search also took custody for safekeeping of two loaded shotguns, two rifles (one with an attached targeting scope), and two military style boxes containing numerous rounds of ammunition. FBI agents also observed a sandbag, commonly called a "shooter's bag," placed in front of one of the apartment windows. A shooter's bag is used to support and steady a rifle when shooting. The window in front of which the shooter's bag was positioned faced north, up Park Street, in Allentown.

15. The FBI placed FALLON under arrest on May 9, 2018 for a violation of Title 18, United States Code, Section 875(c). FALLON was indicted on that same charge on January 10, 2019, and he remains in custody as of the date of this application.

### The Execution Of The Second Search Warrant For The Cellular Telephone

16. Upon executing the search warrant for the Telephone in May 2018, I attempted to conduct an examination of the cellular telephone utilizing the CELEBRITE forensic data extraction software, however, this attempt was unsuccessful. The Telephone was then placed into evidence where it remains. Since that attempt, there were two (2) software updates for the CELEBRITE program. Consequently, on January 15, 2019, I requested another search warrant to search the Telephone with the updated software. This Court signed that search warrant on that same day.

17. On January 16, 2019, I executed the second search warrant on the Telephone. Upon examining the electronically stored information on the Telephone, I observed the following text messages sent by FALLON to a contact named "Mike Kuzcma" on May 7, 2018 (three days after FALLON was terminated from the VA), which stated:

> increased possibility of death delivering projectiles being fired in Allentown. not kidding. People live/work her [sic]
>
> Maybe some arson.

The aforementioned text messages were sent on May 7, 2018, at approximately 12:07 PM and 12:08 PM.

18.  Based upon the threatening language contained within the aforementioned text messages, I request another search warrant to search all of the electronically stored information on the Telephone in order to identify and seize any such information that constitutes or concerns threats to life or property and/or evidence of intent to commit a crime of violence against life or property.

### Cellular Telephone Technology And Forensic Examination

19.  FBI has confirmed with Verizon Wireless that telephone number (716) 200-3770 is a Verizon Wireless telephone number and is assigned to a cellular telephone. Based upon my training and experience, I know that a cellular telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter arranged in "cells", enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log", which records the telephone number, date, and time of calls and text messages made to and from the phone.

20.  In addition to enabling voice communications, modern cellular telephones offer a broad range of capabilities. These capabilities include, but are not limited to, storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones

7

may also include global positioning system technology or other geographical location data for determining the location of the device.

21. Based upon my training and experience, and the experience of other Agents with whom I have discussed this investigation, I know that in order to completely and accurately retrieve data maintained in cellular telephones, to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction, it is often necessary that the cellular telephones be seized and subsequently processed by a qualified specialist in a laboratory setting.

22. Searching the cellular telephones for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for Agents to conduct carefully targeted searches for electronically stored information without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Cellular telephone users have the ability to mislabel or hide information and directories, delete files to evade detection, and take other steps designed to frustrate law enforcement searches. These steps may require Agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. Furthermore, digital files or remnants of such files can be recovered months or even years after they have been deleted. When a person deletes an electronic data file, it does not actually disappear; rather the data remains on the device until it is overwritten by new data.

Therefore, deleted files, or remnants of deleted files, may reside in free or "slack" space, that is, in space on the device that is not allocated to an active file, for long periods of time before they are overwritten. In light of these difficulties, and consistent with Fed. R. Crim. P. 41(e)(2)(B), I request permission to use whatever data analysis techniques appear necessary to locate and retrieve the electronically stored information described in Attachment B, even if such techniques take more than fourteen (14) days.

## CONCLUSION

23.  Based upon the foregoing facts and law, there is probable cause to believe that FALLON transmitted in interstate commerce a communication in which he threated to injure another person, namely the Army Chaplain, in violation of Title 18, United States Code, Section 875(c). Further, there is probable cause to believe that FALLON's cellular telephone constitutes property used to commit a crime and contains evidence of a crime, in the form of electronically stored information as specifically described in **Attachment B** to this application. I therefore respectfully request that the attached warrant be issued.

JASON A. KAMMERAAD
Special Agent
Federal Bureau of Investigation

Sworn to before me this

18th day of January, 2019

H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

9